# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:08CV424-C

| | |
|---|---|
| **SYNERGY INVESTMENT GROUP, LLC,** ) ) ) | |
| Petitioner, ) ) | **MEMORANDUM AND ORDER** |
| vs. ) ) ) | |
| **PAUL DAVID ISENBERG,** ) ) | |
| Defendants. ) ) ) | |

**THIS MATTER** is before the Court on the Petitioner "Synergy Investment Group, LLC's Motion to Stay Arbitration and/or Motion to Compel Arbitration in Charlotte, North Carolina" (document #1) and "Brief in Support ..." (document #3), both filed September 15, 2008; and the "Respondent's Answer and Opposition ... " (document #9) filed December 4, 2008. On December 18, 2008, the Petitioner filed its "Reply ..." (document #13).

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Petitioner's Motion and <u>order</u> the parties to arbitrate their dispute in Charlotte, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action to enforce a venue provision contained in an arbitration agreement. The Petitioner Synergy Investment Group, LLC, a North Carolina limited liability company, is a broker-

dealer registered with the United States Securities and Exchange Commission pursuant to Section 15 of the Securities Exchange Act of 1934, and is a member of the Financial Industry Regulatory Authority (FINRA), formerly the National Association of Securities Dealers (NASD). The Petitioner maintains its headquarters in Charlotte, North Carolina.

The Respondent Paul David Isenberg is a citizen and resident of Florida, who sometime in early 2004 was employed by the Petitioner as a registered representative, and sometime later was promoted to branch manager of the Petitioner's "central Florida office." During the time that the Respondent was working solely as a registered representative, his employment was governed by a contract the parties have labeled a "Rep. Agreement." When the Respondent was promoted to branch manager, which included supervision of other registered representatives working in the same office, the parties entered into a second contract, entitled "Office of Supervisory Jurisdiction Agreement" ("OSJ Agreement").

The OSJ Agreement contained an arbitration clause which stated as follows:

> Any dispute or controversy of a securities matter arising between the parties, their control person, predecessors, subsidiaries, affiliates, successors, assigns or employees concerning this Agreement, its interpretation or its termination, whether arising prior to, on or subsequent date thereof, shall be resolved by arbitration. <u>Any arbitration under this Agreement shall be conducted in Charlotte, North Carolina pursuant to the rules of [FINRA] and before an arbitration panel appointed by [FINRA]</u>.

"OSJ Agreement" at 10, Exhibit B to "Brief in Support ..." (document #3) (emphasis added). It is undisputed that the Rep. Agreement also contained an arbitration clause that was identical to the clause in the OSJ Agreement except that Atlanta, Georgia was designated as the venue for the arbitration.

Sometime in May 2007, and after receiving notice that the State of Florida was conducting

2

an investigation into the Respondent's relationship with an individual who was barred from working in the insurance industry, including allegedly permitting a person under his supervision to engage in activities that he was not licensed to perform, the Petitioner requested that the Respondent resign, which he did.

As a FINRA member, and as the Respondent concedes, when the Petitioner terminated him, the Petitioner was required to give notice to FINRA on Form U-5, entitled "Uniform Termination Notice for Securities Industry Registration." Accordingly, on May 22, 2007 the Petitioner filed its Form U-5 with FINRA. See Exhibit A to "Brief in Support ..." (document #3). The form included the following disclosures:

1. On the "Investigation" Disclosure Reporting Page: that the Petitioner had received a notice of investigation from the State of Florida related to the Respondent's "association with an individual that had been barred by the insurance industry" and to "seminar presentation issues."

2. On the "Internal Review" Disclosure Reporting Page: that Synergy was conducting an internal review regarding "allegations that an individual was performing activities without being license[d] under the supervision of Mr. Isenberg" and "unapproved advertising and seminar materials and speakers."

3. On the "Termination" Disclosure Reporting Page: the Respondent's "failure to carry out supervisors [sic] responsibilities." The disclosure went on to state that "Mr. Isenberg was our Branch Manager and he allowed unapproved advertisements and seminars to be used." The disclosure also stated that the Respondent "also associated a person in the seminars [who] was barred from the insurance industry [and who] we believe performed activities that required registration."

On March 6, 2008, and in apparent recognition that the arbitration clause contained in the

3

OSJ Agreement is valid, the Respondent filed a complaint for arbitration with FINRA, seeking damages between $500,000 and $1,000,000, pursuant to claims for breach of contract, defamation, and tortious interference with contractual relationships. Rather than file for arbitration in Charlotte as he was required to do under the terms of the parties' arbitration clause, however, the Respondent filed his complaint with FINRA's Florida office.[1]

On May 2, 2008, the Petitioner filed with FINRA a Motion to Transfer Venue, seeking to enforce the venue provision contained in the arbitration clause.

On August 13, 2008, the Florida arbitration panel issued an "Order," which other than identifying the parties, their counsel, and the members of the panel, states only "Motion to Change Venue-Denied." See Exhibit B to "Respondent's Answer and Opposition ... " (document #9).

On September 15, 2008, the Petitioner filed the subject "Motion to Stay Arbitration and/or Motion to Compel Arbitration in Charlotte, North Carolina," seeking an Order requiring the Respondent to arbitrate his claims in Charlotte.

In his response brief, the Respondent contends initially that he has not had sufficient minimum contacts with North Carolina to justify this Court exercising personal jurisdiction over him. Specifically, the Respondent maintains that he has "never lived or maintained any personal, business or financial ties in or to North Carolina." Document #9 at 2.

The Respondent further asserts that should the Court find that grounds for personal jurisdiction do exist, the Court nevertheless lacks jurisdiction over what the Respondent characterizes as an "interlocutory appeal of an ongoing arbitration proceeding." Id. In other words,

---

[1] Although the record is unclear as to where in Florida the Respondent initially filed his arbitration claim, the record does reflect that the arbitration is being overseen administratively from FINRA's Dispute Resolution office in Boca Raton.

the Respondent contends that his decision to file his arbitration claim in Florida, which clearly violated the parties' agreement to arbitrate in Charlotte, followed by the Florida arbitration panel's refusal to transfer the venue of the hearing to Charlotte, have divested this Court of its authority to enforce the arbitration clause.

The Petitioner's Motion has been fully briefed and is, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

### A. Personal Jurisdiction

In evaluating a challenge to personal jurisdiction, all factual disputes must be resolved in favor of the non-moving party, in this case, the Petitioner, who need make only a prima facie showing that exercise of personal jurisdiction is proper. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Vishay Intertechnology, Inc. v. Delta International Corp., 696 F.2d 1062, 1064 (4th Cir. 1982); and General Latex and Chemical Corp. v. Phoenix Medical Technology, Inc., 765 F. Supp. 1246, 1248 (W.D.N.C. 1991).

Analysis of personal jurisdiction has traditionally involved two determinations: "whether the [particular state's] long-arm statute authorizes the exercise of jurisdiction in the circumstances presented and ... whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). However, because "the North Carolina long-arm statute [N.C. Gen. Stat. § 1-75.4] has been interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one." Id., citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).

5

The exercise of personal jurisdiction comports with due process when the party contesting jurisdiction purposefully established "minimum contacts" in the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Ellicott Mach., 995 F.2d at 477. In addition, the court's exercise of personal jurisdiction must comport with traditional notions of "fair play and substantial justice." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (personal jurisdiction exists where defendant introduces product into stream of commerce with expectation that citizens in forum state will use the product).

Later cases have emphasized that the minimum contacts must be "purposeful." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend himself in a forum state when the non-resident never purposefully availed himself of the privilege of conducting activities within the forum state, thus never invoking the benefits and protections of its laws. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). Moreover, "this purposeful requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 523 (M.D.N.C. 1996), citing Burger King, 471 U.S. at 472; and World Wide Volkswagen, 444 U.S. at 297.

A court's exercise of personal jurisdiction may be specific or general. General personal jurisdiction exists, even when an action does not arise out of the non-resident defendant's contact with the forum state, if the non-resident defendant has had continuous and systematic contact with the forum state. Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-15 (1983). Specific jurisdiction involves the exercise of personal jurisdiction over a defendant in an action

arising out of the defendant's contacts with the forum state. See Helicopteros, 466 U.S. at 414; McGee v. International Life Ins. Co., 355 U.S. 220, 225 (1957) (single contract which is subject of the action and which was entered in forum state proper basis for personal jurisdiction); English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990) (same); and Prince v. Illien Adoptions Int'l Ltd., 806 F.Supp. 1225, 1227 (D. Md. 1992) (same).

Where a court seeks to assert specific jurisdiction over a non-resident party, the fair warning requirement inherent in due process still demands that the non-resident party have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking its benefits and protections. See, e.g., Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989).

Applying the above principles to the subject motion, the Respondent has had sufficient "minimum contacts" with North Carolina to satisfy due process requirements for the exercise of personal jurisdiction. Even assuming arguendo that the Respondent has not "had continuous and systematic contact" with North Carolina, Helicopteros, 466 U.S. at 414-15, such as would justify personal jurisdiction generally, the events which give rise to the present dispute concerning the enforceability of the venue provision contained within what the Respondent concedes is an otherwise valid arbitration clause does support personal jurisdiction in this specific instance. Id.

Indeed, the Respondent purposefully entered into a contract with a North Carolina company that contained an arbitration clause stating that any ensuing arbitration would be conducted in this State. Accordingly, the Respondent certainly had "fair warning" that he might be haled into a court in North Carolina for the purposes of the enforcement of that arbitration clause.

7

## B. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") establishes a federal policy favoring the enforcement of written agreements to arbitrate. Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to stay the proceeding and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. See 9 U.S.C. § 3. Indeed, the court must compel arbitration even if the disputed claims are exempted from arbitration or otherwise considered nonarbitrable under state law. Perry v. Thomas, 482 U.S. 483, 489 (1987) (state statute authorizing judicial forum for resolving wage disputes "must give way" to Congress' intent to provide for enforcement of arbitration agreements); and Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F. 3d 83, 90 (4th Cir. 2005) (FAA preempts state law barring arbitration of certain claims).

The Supreme Court has instructed that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991), quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. " Moses H. Cone, 460 U.S. at 24-25. See also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001); Long v. Silver, 248 F.3d 309, 315-16 (4th Cir. 2001); and O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997).

Moreover, venue selection provisions contained within otherwise valid arbitration

agreements are routinely enforced. See, e.g., CNF Constructors, Inc. v. Donohoe Const. Co., 57 F.3d 395, 401-02 (4th Cir. 1995) (venue of arbitration issue was moot because arbitration panel changed venue of hearing to parties' contractually-agreed venue, Raleigh, North Carolina); National League of Junior Cotillions, Inc., v. Porter, 2007 WL 1741278, at 4 (W.D.N.C. 2007) (enforcing arbitration clause with venue provision that arbitration be held at American Arbitration Association office nearest Gaston County, North Carolina); and Milgram v. Hunter, NCWD File No. 5:01CV12-V, "Memorandum and Order," Document #33 (enforcing arbitration clause with venue provision that arbitration be held in King County, Washington).

In CNF Constructors, Inc., supra, on facts substantially similar to those at issue here, the Fourth Circuit declined to order that the arbitration venue be changed from the venue chosen by the party that instituted the arbitration only because the arbitration panel enforced the parties' earlier agreement and moved the venue of the hearing to Raleigh. Id., 57 F.3d at 402 ("While there may theoretically be some possibility that AAA could change the venue again, we believe the possibility here to be too remote to justify what would amount [under those circumstances] to an advisory opinion on our part"). In short, had the arbitration panel not honored the venue provision, the Fourth Circuit expressed a clear willingness to enforce it.

The Respondent cites Glass v. Kidder Peabody & Co., Inc., 114 F.3d 446 (4th Cir. 1997), for the proposition that once an arbitration proceeding has commenced, the only action that the Court may take is to confirm or vacate any arbitration award that is subsequently made. In Glass, however, unlike the case at bar, the arbitration was commenced only after the district court had granted the appellee's motion to compel arbitration. Id. at 447. Moreover, despite having ordered the parties to arbitrate as they had agreed, the district court subsequently granted a motion to dismiss

9

that the appellee filed after the court had determined that arbitration was required. The Fourth Circuit held that "[q]uestions regarding the arbitrability of an issue may not be revisited by the court [once arbitration has been ordered] ... Kidder's plea of laches [raised in its motion to dismiss], therefore, cannot defeat the district court's order of arbitration" but rather were to be considered by the arbitration panel. Id. at 456.

Rather than being divested of authority to consider the venue issue raised in the subject motion, it is clear from the Fourth Circuit's opinion in CNF Constructors, Inc., supra, that the Court not only may but must give effect to the venue provision contained within the parties' agreement to arbitrate, that is, that "[a]ny arbitration under this Agreement shall be conducted in Charlotte, North Carolina pursuant to the rules of FINRA and before an arbitration panel appointed by FINRA." The parties have not indicated whether this result may best be accomplished by the Respondent dismissing the Florida arbitration and re-filing his claims in Charlotte or by submitting to the arbitration panel a consent motion to transfer venue of the Florida arbitration proceeding to Charlotte. Accordingly, the undersigned will grant the Petitioner's Motion and order the parties to arbitrate the underlying dispute in Charlotte, North Carolina, and will further order the parties to consult and promptly resolve any remaining procedural details, provided that the arbitration must be instituted in or transferred to Charlotte on or before February 15, 2009.

### III. ORDER

**IT IS HEREBY ORDERED** that:

1. The Petitioner "Synergy Investment Group, LLC's Motion to Stay Arbitration and/or Motion to Compel Arbitration in Charlotte, North Carolina" (document #1) is **GRANTED**, that is,

the parties are **ORDERED** to submit their dispute to binding arbitration pursuant to the provisions of their arbitration agreement, including conducting the arbitration proceeding in Charlotte, North Carolina, on or before February 15, 2009.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; to Kevin D. Rosen, FINRA Dispute Resolution, 5200 Town Center Circle, Tower 1, Suite 200, Boca Raton, Florida 33486; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED**.

Signed: January 8, 2009

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge